# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOEL M. HURLEY,

        **Petitioner,**

        **v.**                              **Case No. 16-CV-228**

CATHY A. JESS,[1]

        **Respondent.**

## REPORT AND RECOMMENDATION

### 1. Facts and Procedural History

In September of 2010, fifteen-year-old MCN told her mother that, when she was in elementary school, her then-stepfather, Joel M. Hurley, would lay in bed with her and sexually assault her with his hand. (ECF No. 8-15 at 94.) MCN's mother and Hurley had been divorced for years and, although MCN could recall certain details of the assaults, she was unable to recall many details as to when the assaults occurred. Other than recalling that the assaults occurred after the family had moved into a newly built home

---

[1] Hurley is incarcerated at the Oshkosh Correctional Institution. *See* Offender Locator, Wisconsin Department of Corrections, available at https://appsdoc.wi.gov/lop/detail.do (last visited Aug. 9, 2019). The warden of that institution is Cathy A. Jess. *See* https://doc.wi.gov/Pages/OffenderInformation/Adult Institutions/OshkoshCorrectionalInstitution.aspx. In accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

but before she entered middle school in fifth grade, she could not be more specific. (ECF No. 8-15 at 96, 110, 116.) Other evidence demonstrated that the family moved into the home in early-2003 (ECF No. 8-16 at 91), and MCN would have begun fifth grade in late-2005.

MCN also reported other incidents of a sexual nature involving Hurley. In one, Hurley chased her around the house in a playful manner, caught her, and took off her clothes. She did not recall the context of this incident, but it might have been related to getting her to take a bath or ready for bed. (ECF No. 8-15 at 112.) In middle school, Hurley would weigh her naked, and would sometimes carry her there by putting her on his shoulders while she was naked.[2] (ECF No. 8-15 at 98-99.) And there was one last instance where he got into the shower with her. (ECF No. 8-15 at 97.) MCN was naked but Hurley was wearing his underwear. Hurley asked MCN if she would tell her mother about it and she said she would. (ECF No. 8-15 at 97-98.)  But she was afraid and did not report it until she was 15.

---

[2] The Wisconsin Supreme Court concluded that these weighing instances constituted allegations "of sexual contact with a child under the age of thirteen, contrary to Wis. Stat. § 948.02(1)(b)," based on the assumption that, if he was carrying her on his shoulders, her "intimate parts" would be in contact with his body. *Hurley*, 2015 WI 35, ¶39. Thus, by its tally, the amended complaint alleged 26 separate sexual assaults—"five acts of digital penetration of the vagina and one act of forced touching of Hurley's genitals" and the instances where Hurley carried MCN to be weighed, which she estimated to have occurred "in excess of 20 times." *Id.*, ¶¶ 37-40.

In July 2011, Hurley was charged with one count of repeated sexual assault of a child occurring between 2000 and 2005. (ECF No. 18.[3])

After MCN accused Hurley, his sister contacted law enforcement and reported that, when she was between eight and ten years old, Hurley repeatedly sexually assaulted her. These incidents occurred in the early to mid-1980s, roughly 20 years before the sexual assault of MCN, when Hurley was about 12 to 14 years old.

Over Hurley's objection, his sister was allowed to testify about Hurley's alleged sexual assault of her. Prior to her testimony, the court instructed the jury as follows:

> Members of the Jury, evidence will now be presented regarding other conduct of the defendant for which the defendant is not on trial, specifically evidence will be presented that the defendant engaged in sexual intercourse with Janell Goldsmith. Sexual intercourse means any intrusion however slight by any part of a person's body or of any object into the genital or anal opening of another. Emission of semen is not required.
>
> If you find this conduct did occur, you should consider it only on the issues of opportunity and method of operation. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.
>
> The evidence is received on the issues of, first, opportunity, that is whether the defendant had the opportunity to commit the offense charged; and second, method of operation.
>
> You may consider this evidence only for the purposes I have described giving it the weight you determine it deserves. It is not to be used to

---

[3] The court has been provided with a copy of the amended criminal complaint and the judgment of conviction; the information does not appear to be in the record.

conclude that the defendant is a bad person and for that reason is guilty of the offense charged.

(ECF Nos. 8-15 at 170 – 8-16 at 4.)

Hurley testified and denied any incident where he chased MCN and removed her clothes, (ECF No. 8-16 at 107) denied ever weighing MCN nude (except for one instance where MCN's mother weighed her nude and he was present) (ECF No. 8-16 at 108), denied ever carrying MCN on his shoulders while she was naked (ECF No. 8-16 at 109-10) and denied ever touching MCN inappropriately (ECF No. 8-16 at 113-14, 121-22). He was also asked if he recalled the conduct his sister alleged. He said he did not. (ECF No. 8-16 at 98, 100.) In his closing argument, the prosecutor said: "When the defendant testified, he was asked by his -- by the attorney regarding [his sister] he said well, do you recall any of these incidents with [your sister] ever happening? And his answer was no. The question wasn't did you do this or not, it was do you recall? That's different than it didn't happen." (ECF No. 8-17 at 25-26.)

The prosecutor also referred to Hurley's sister's testimony in his closing: "one of the purposes you can use [her] testimony for is the defendant's opportunity, his opportunity to commit the crime. The defendant's opportunistic, took advantage of two elementary girls, just like the prowling cat taking advantage of that mouse in the box. Opportunity, Ladies and Gentlemen. A preying cat, a vulnerable mouse." (ECF No. 8-17 at 31.)

4

On January 19, 2012, the jury convicted Hurley and the court sentenced him to 18 years of initial confinement and seven years of extended supervision. (ECF No. 8-1.)

Hurley sought post-conviction relief on a variety of grounds. (*See* ECF No. 8-3.) The circuit court granted the motion, finding that the prosecutor's closing argument was improper when he suggested that Hurley never denied his sister's allegations. The prosecutor knew that Hurley, in fact, had denied his sister's allegations, which denial was documented in a police report. (ECF No. 8-3 at 103.) The circuit court denied Hurley's other claims for relief.

The state and Hurley both appealed. (ECF No. 1-3.) The Wisconsin Court of Appeals concluded that the complaint violated due process and that the circuit court erred in admitting the sister's allegations. (ECF No. 1-3, ¶3.) It did not address the parties' other arguments, including the claim on which the circuit court granted relief.

The Wisconsin Supreme Court granted review and reversed the court of appeals. *State v. Hurley*, 2015 WI 35, 361 Wis. 2d 529, 861 N.W.2d 174. Two justices dissented, agreeing with the court of appeals that the circuit court erroneously exercised its discretion in admitting the other acts evidence.

Hurley then turned to this court with a petition for a writ of habeas corpus. In his petition he presents four arguments: (1) the time period alleged in the amended complaint and information is overbroad, depriving Hurley of his right to due process; (2) his lawyer was ineffective for not seeking to dismiss the charges based on

insufficient notice; (3) the admission of his sister's allegations violated his right to due process; and (4) the prosecutor's closing argument violated due process.

## 2. Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

## 3. Analysis

### a. Sufficiency of Amended Complaint and Information

"In all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation…." U.S. Const. amend. VI. Incorporated into and made applicable to the states by way of the Fourteenth Amendment's due process clause, this "guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense." *Kaczmarek v. Rednour*, 627 F.3d 586, 596 (7th Cir. 2010); *see also*

*Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). This includes that a defendant be informed "with reasonable particularity" as to the "time, place, and circumstances" of the alleged offense. *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

Hurley was charged with one count of repeated sexual assault of a child. Wis. Stat. § 948.025 (2005-06). The Wisconsin legislature enacted this statute "to address the problem that often arises in cases where a child is the victim of a pattern of sexual abuse and assault but is unable to provide the specifics of an individual event of sexual assault. The purpose of the legislation was to facilitate prosecution of offenders under such conditions." *Hurley*, 2015 WI 35, ¶10 n.6 (quoting *State v. Nommensen*, 2007 WI App 224, ¶15, 305 Wis. 2d 695, 741 N.W.2d 481). The statute provides, in relevant part:

> (1) Whoever commits 3 or more violations under s. 948.02 (1) or (2) within a specified period of time involving the same child is guilty of:
> …
>
> (ar) A Class B felony if fewer than 3 of the violations were violations of s. 948.02 (1) (a) but at least 3 of the violations were violations of s. 948.02 (1) (a) or (b).

*Hurley*, 2015 WI 35, ¶10 n.6 (quoting Wis. Stat. § 948.025 (2005-06)). Although the statute requires that the violations be "within a specified period of time," it offers no indication

7

as to what that period of time need be. In Hurley's case, the state alleged that the repeated sexual assaults occurred "on and between 2000 and 2005." (ECF No. 18 at 1.)

In assessing whether this six-year period provided Hurley sufficient notice of the charges against him, the Wisconsin Supreme Court assessed seven factors:

> (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately; (4) the length of the alleged period of time in relation to the number of individual criminal acts alleged; (5) the passage of time between the alleged period for the crime and the defendant's arrest; (6) the duration between the date of the indictment and the alleged offense; and (7) the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

*Hurley*, 2015 WI 35, ¶35 (quoting *State v. Fawcett*, 145 Wis. 2d 244, 249, 426 N.W.2d 91 (Ct. App. 1988)). The court concluded that the 2000 to 2005 time period alleged was sufficient notice.

The Wisconsin Supreme Court noted that, in the context of an accusation of repeated sexual assault of a child, it is often impossible to identify when any specific instance of sexual assault occurred. Children are unlikely to adequately recall the specific order of events, much less specific dates. Moreover, victims often delay reporting such crimes until years later, as MCN did, thus compounding the difficulty in dating any specific incident.

Hurley has not identified any decision of the United States Supreme Court in which the court held that a lack of temporal specificity in a charge violated due process.

The most relevant authority Hurley identifies is dicta in a pre-AEDPA case of the Seventh Circuit Court of Appeals. In *Fawcett v. Bablitch*, 962 F.2d 617 (7th Cir. 1992), the petitioner was initially charged with unlawful sexual contact with a child on December 7, 1985. *Id.* at 618. When the petitioner demonstrated an alibi for that date, the state amended the charge to allege two instances of sexual contact with a child in the six months preceding December 1985. As the court of appeals noted, "[i]t is harder to come up with an alibi for a six-month period than for a day." *Id*.

The petitioner in *Fawcett* urged the Seventh Circuit to assess the sufficiency of a charge under the framework set forth in *People v. Morris*, 61 N.Y.2d 290, 461 N.E.2d 1256, 473 N.Y.S.2d 769 (1984), "which calls for an open-ended inquiry into the reasons why the charge was drafted as it was and the effects on the defendant. Could the prosecutor have been more specific? If so, *Morris* holds, he must be." *Fawcett*, 962 F.2d at 619.

The Seventh Circuit held that the proper inquiry was not that set forth in *Morris* but rather was that set forth in *Hamling v. United States*, 418 U.S. 87, 117 (1974). In *Hamling*, the Supreme Court stated that a charge "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. The Seventh Circuit concluded that the information provided Fawcett with sufficient notice of the

charges such that he would be able to prepare a defense. *Fawcett*, 962 F.2d at 619. In

reaching that conclusion, the court stated:

> That the prosecutor may have a hard time framing a charge that allows an
> adequate defense is no reason to cut down the protections accorded to
> suspects. If, say, [the ten-year-old victim] had no idea where within a five-
> year period the events took place, the [approach discussed in *People v.
> Morris*, 61 N.Y.2d 290, 461 N.E.2d 1256, 473 N.Y.S.2d 769 (1984)] might
> allow the prosecutor to use a five-year span even if that destroyed any
> possibility of an adequate defense. The *Hamling* approach would bar such
> a vague charge--but if the charge is specific enough to allow a defense, the
> prosecutor's ability to do better does not vitiate the conviction.

*Id*.

Hurley contends that this dicta in *Fawcett* establishes that a five-year span fails to

provide the defendant with sufficient notice of the charges. Even if the court were to

accept that position, *Fawcett* stated that a five-year span would be overbroad only if it

"destroyed any possibility of an adequate defense." *Id.*

In *Fawcett*, although the six-month timeframe precluded the petitioner from

relying on an alibi defense, the court noted that the petitioner had other adequate

defenses, including a general denial of the allegations and challenges to the victim's

memory and veracity. *Fawcett*, 962 F.2d at 619. In denying the petition, the court

concluded that "Wisconsin afforded Fawcett notice sufficient to permit him to defend

against the charge.". *Id.*

Here, the six-year timespan alleged was obviously broad. But the court does not

find it unconstitutionally overbroad. Although the span negated the viability of an alibi

defense (for example, it deprived Hurley of the opportunity to say that a particular assault could not have occurred because he was someplace else), the offense of repeated sexual assault of a child will necessarily cover a "period of time." *See* Wis. Stat. § 948.025. The fact that Hurley was charged with an offense that necessarily encompasses a course of conduct occurring over a period of time—repeated sexual assault of a child—distinguishes this case from *Fawcett*.

Even if the timespan alleged was significantly narrower--for example, from 2003 through September of 2005 (which is when, based on the evidence at trial, Hurley sexually assaulted MCN in her bed)--an alibi defense would not have been any more viable. Same, too, if the state could reduce it to a six-month period as in *Fawcett*. Only if the state identified the specific date on which each assault is alleged to have occurred might an alibi defense be viable. But not even Hurley argues that the constitution requires elementary school age victims of ongoing sexual abuse to be able to recall the specific date of each of their assaults before their attackers can be prosecuted. And the Supreme Court has never held that such specificity is required. *Burbine v. Scribner*, No. CIV S-04-1691 LKK EFB P, 2009 U.S. Dist. LEXIS 63029, at *70 (E.D. Cal. July 15, 2009) ("The United States Supreme Court has not determined that an information in a child sexual abuse case is constitutionally deficient for failure to provide specific dates of incidents."). In any event, an alibi defense would have been specious given that, because the victim was Hurley's stepdaughter, "he had access to the victim[] on

numerous occasions." *Stone v. Pollard*, No. 10-C-122, 2010 U.S. Dist. LEXIS 96724, at *13 (E.D. Wis. Aug. 27, 2010).

The broad time period alleged in the complaint and information did not "destroy[] any possibility of an adequate defense." Like the petitioner in *Fawcett*, Hurley was able to deny the allegations as well as challenge MCN's memory and the veracity of her claims. *See Fawcett*, 962 F.2d at 619. In fact, that is precisely what Hurley did at trial. Therefore, the court concludes that Hurley is not entitled to habeas relief on this claim.

### b. Ineffective Assistance

Hurley argues that his trial counsel was ineffective for not moving to dismiss the charges on the ground that the time period was overbroad. To prevail on a claim of ineffective assistance of counsel, a petitioner "must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).

Trial counsel's decision to not challenge the charges obviously did not prejudice Hurley. The Wisconsin Supreme Court considered the merits of Hurley's challenge to the six-year time period and correctly rejected it. The challenge would have failed all the same had it been presented first by his trial counsel instead of his post-conviction counsel. Having failed to prove prejudice, Hurley is not entitled to relief on this claim. *See Buck v. Davis*, 137 S. Ct. 759, 776 (2017) ("a litigant must also demonstrate prejudice—'a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different'") (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

### c. Other Acts Evidence

"To preserve a claim for federal collateral review, the petitioner must 'fairly present' it to all levels of the state judiciary." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). That requires the petitioner to have given "the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (quoting *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001)). Therefore, the petitioner must have presented not only the relevant facts but also the law that controls the claim that he now seeks to present in federal court. *Id.* (citing *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)).

The court considers several factors when determining whether a petitioner fairly presented a claim:

> whether the petitioner (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claims in terms particular to a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation.

*Villanueva v. Anglin*, 719 F.3d 769, 775 (7th Cir. 2013) (citing *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992)). The respondent argues that Hurley procedurally defaulted his claim regarding the admission of his sister's testimony. Although he challenged the admission of his sister's testimony, he did not present it as an alleged

violation of his constitutional right to due process. Rather, his claim rested solely on state evidentiary law.

The court has reviewed Hurley's brief to the Wisconsin Supreme Court and agrees that it was focused entirely on the question of whether the admission of the testimony from Hurley's sister was consistent with Wisconsin evidentiary law. (ECF No. 8-10 at 27-37.) He argued that the state offered his sister's allegations to show his propensity to commit such crimes, a purpose that was not then proper under Wisconsin law. Hurley never referred to "due process" or the Constitution (although even if he had this alone still might not have been sufficient, *see Verdin*, 972 F.2d at 1475; *Gleason v. Jenkins*, No. 05-C-123-C, 2005 U.S. Dist. LEXIS 25638, at *21 (W.D. Wis. Oct. 27, 2005)).

The only authority Hurley cited to the Wisconsin Supreme Court was Wis. Stats. § 904.04(2) and state case law, most prominently *State v. McGowan*, 2006 WI App 80, 291 Wis. 2d 212, 715 N.W.2d 631. He also relied on *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), Wisconsin's lead case regarding the admission of other acts evidence. Neither *McGowan* nor *Sullivan* refer to due process or the Constitution. Even though the Wisconsin Supreme Court has said that evidentiary rules should be applied to ensure a fair trial, *Whitty v. State*, 34 Wis. 2d 278, 295, 149 N.W.2d 557, 564 (1967), that does not mean that every challenge to a state evidentiary ruling encompasses a due process challenge. Certainly Hurley does not cite any authority supporting such a proposition. The cases Hurley cited to the Wisconsin Supreme Court did not apply the federal

constitutional standard. Finally, in his brief to the Wisconsin Supreme Court Hurley

stated his claim was reviewable under an abuse of discretion standard, *i.e.,* the standard

applicable to evidentiary rulings. (ECF No. 8-10 at 30.) As Hurley concedes, that is not

the standard of review that would have applied had he been making a constitutional

claim. (ECF No. 13 at 41.)

Therefore, the court finds Hurley has procedurally defaulted this claim by failing

to fairly present it to the Wisconsin Supreme Court. He never attempted to present this

as a constitutional claim to the Wisconsin Supreme Court. The respondent has not

waived this default, and Hurley has made no effort to excuse it. Therefore, Hurley is not

entitled to relief on this claim.

Even if the court were to look past Hurley's procedural default and consider the

claim on its merits, the court would still recommend that relief be denied.[4]

> To be of constitutional import, an erroneous evidentiary ruling must be so
> prejudicial that it compromises the petitioner's due process right to a
> fundamentally fair trial. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 757
> (7th Cir. 1976); *cf. Duncan v. Henry*, 513 U.S. 364, 366 (1995). This means
> that the error must have produced a significant likelihood that an innocent
> person has been convicted. *See Thompkins v. Cohen*, 965 F.2d 330, 333 (7th
> Cir. 1992). Indeed, because of this high standard, evidentiary questions are
> generally not subject to review in habeas corpus proceedings. *United States
> ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir. 1974).

---

[4] Hurley argues that this claim should be subject to de novo review because the Wisconsin Supreme
Court did not address it. (ECF No. 13 at 31.) He is correct that the Wisconsin Supreme Court never
addressed it. But that is because did not fairly present it. In any event, the standard of review is
immaterial. The claim fails even under the less deferential pre-AEDPA standard set forth in 28 U.S.C.
§ 2243.

*Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999).

Applying this standard, the court finds no basis for concluding that the admission of his sister's testimony violated Hurley's right to due process. Even accepting Hurley's argument that the evidence was used to show his propensity to commit the charged offense rather than for a proper purpose under Wis. Stat. § 904.04, that would not constitute a due process violation. Rather, it would establish only an error of Wisconsin evidentiary law, which is not cognizable in habeas. As a matter of constitutional law, there is no bar against the admission of such propensity evidence. *See United States v. Hawpetoss*, 478 F.3d 820, 823-27 (7th Cir. 2007); *cf. Peterson v. Douma*, 751 F.3d 524, 528, 532 (7th Cir. 2014). It is routinely admitted in cases alleging sexual assault of a child and is authorized under Fed. R. Evid. 414. *United States v. Hawpetoss*, 478 F.3d 820, 823-27 (7th Cir. 2007). In fact, Wisconsin has since amended its evidentiary law to allow for propensity evidence. The amendment would seem to remove any doubt as to whether such evidence would now be admissible under Wisconsin law (albeit subject to exclusion like all evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury …" Wis. Stat. § 904.03). *See* 2013 Wis. Act 362, § 38; Wis. Stat. § 904.04(2)(b)1. (2017-18).

Therefore, the court will recommend that Hurley be denied relief on this claim.

### d. Prosecutor's Closing Argument

Hurley testified on his own behalf. The direct examination included the following:

> Q: Now, [your sister] testified that she was assaulted when she believed she was around eight years old. Do you recall having an encounter with [your sister] when she was around eight?
>
> A: No.

(ECF No. 8-16 at 98.)

> Q: Do you recall any of the allegations [your sister] brought up here today?
>
> A: No, I do not.

(ECF No. 8-16 at 100.)

In his closing argument the prosecutor noted the semantics of these questions:

> When the defendant testified, he was asked by his -- by the attorney regarding [his sister] he said well, do you recall any of these incidents with [your sister] ever happening? And his answer was no. The question wasn't did you do this or not, it was do you recall? That's different than it didn't happen.

(ECF No. 8-17 at 25-26.) Hurley argues that the prosecutor's implication was that Hurley did not actually deny his sister's allegations. However, the prosecutor knew that Hurley had denied his sister's allegations. He had a police report that stated Hurley spoke to his sister on the phone, she confronted him with her allegations, and he "denied having any kind of inappropriate sexual contact with her." (ECF No. 8-2 at 49.)

Relying on *State v. Weiss*, 2008 WI App 72, 312 Wis. 2d 382, 752 N.W.2d 372, the circuit court found that the prosecutor's argument required a new trial. (ECF No. 8-3 at 118-23.) The court of appeals did not address the issue because it reversed Hurley's conviction on other grounds. *State v. Hurley*, 2014 WI App 71, 354 Wis. 2d 622, 848 N.W.2d 903 (unpublished). The Wisconsin Supreme Court then reversed the circuit court, disagreeing that the prosecutor was asking the jury to infer that Hurley had never denied assaulting his sister. The Supreme Court said, "The reasonable inference the prosecutor was arguing was that Hurley had not been asked by his trial counsel whether he assaulted [his sister] (and Hurley did not volunteer a denial of [his sister]'s allegations) because Hurley believed it was possible he had assaulted her, but could not recall having done so … " *Hurley*, 2015 WI 35, ¶102.

The respondent argues that Hurley never presented the constitutional basis of his claim to the Wisconsin Supreme Court. The court agrees. There is nothing in Hurley's brief to the Wisconsin Supreme Court that would suggest that he was claiming a constitutional error with respect to the prosecutor's closing argument. Instead, he argued that the circuit court's decision granting him a new trial was not an abuse of discretion under state law. (ECF No. 8-10 at 37-38.) As Hurley acknowledges, abuse of discretion is not the appropriate standard of review for a constitutional claim. (ECF No. 13 at 41.) *Weiss,* upon which Hurley relied before the Supreme Court, did not grant relief under the federal due process clause but reversed the defendant's conviction

18

under state law "in the interest of justice." *Weiss*, 2008 WI App 72, ¶16. The fact that *Weiss* cited *Berger v. United States*, 295 U.S. 78, 88 (1935), a case dealing with the constitutional limits of a prosecutor's closing argument, is insufficient to constitute fair presentment of the constitutional aspect of Hurley's claim.

Therefore, Hurley procedurally defaulted this claim. Again, the respondent has not waived this default, and Hurley has made no effort to excuse it. Consequently, Hurley is not entitled to relief on this claim.

Even if the court were to look past Hurley's procedural default, accept his characterization of the prosecutor's argument, and conclude that it was improper, *see Ellison v. Acevedo*, 593 F.3d 625, 635-36 (7th Cir. 2010), it would not entitle him to habeas relief. For Hurley to obtain relief, he would have to show that the prosecutor's argument "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Czech v. Melvin*, 904 F.3d 570, 577 (7th Cir. 2018) (quoting *Jones v. Basinger*, 635 F.3d 1030, 1052 (7th Cir. 2011)). "That is, petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)) (quotation marks omitted). "When making a determination under *Brecht*, the reviewing court must make a 'de novo examination of the record as a whole' to decide whether a properly instructed jury would have arrived at the same verdict, absent the error." *Id.* (quoting *Jenkins v. Nelson*, 157 F.3d 485, 495 (7th Cir. 1998)). "If a habeas court 'has so much as a grave doubt as to

the harmlessness of [a constitutional error], it should grant relief.'" *Czech v. Melvin*, 904 F.3d 570, 577 (7th Cir. 2018) (quoting *Jones*, 635 F.3d at 1052) (quotation marks omitted).

Based on the court's review of the record as a whole, the court has no doubt that the jury's verdict would have been the same had the prosecutor never made the argument or if the jury had known that there existed a police report noting that Hurley denied his sister's allegations. Therefore, the court finds Hurley is not entitled to relief on this claim.

**4. Conclusion**

Having concluded that Hurley is not entitled to relief on any claim presented in his petition, **IT IS THEREFORE RECOMMENDED** that Hurley's petition for a writ of habeas corpus be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 22nd day of August, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge